UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In re:

Zoltan Karoly Kovacs,

                       Debtor.

---------------------------------------------------------------X

30 Thompson AW Holdings, LLC and
9 Minetta AW Holdings, LLC,

                       Plaintiffs,

                v.

Zoltan Karoly Kovacs,

                       Defendant.

---------------------------------------------------------------X

Chapter 7

Case No.: 8-18-75875-las

Adv. Pro. No.: 8-19-08028-las

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs 30 Thompson AW Holdings, LLC ("Thompson AW") and 9 Minetta AW

Holdings, LLC ("Minetta AW") commenced this adversary proceeding against defendant

Zoltan Karoly Kovacs, the debtor in this chapter 7 case, seeking a determination that debts

owed by defendant to each of them are excepted from discharge under 11 U.S.C. § 523(a)(2)

and (a)(4).[1] The debts arise out of two judgments entered in the Supreme Court of the State

of New York, County of New York, one in favor of Thompson AW in the amount of $4,360,275

and the other  in favor of Minetta AW in the amount of $1,090,225.[2] The thrust of plaintiffs'

argument is that the debts at issue are nondischargeable under § 523(a)(2) by reason of (i) an

allegedly false and misleading oral statement by defendant to plaintiffs, (ii) an allegedly false

---

[1] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)."

[2] In defendant's bankruptcy case, Thompson AW filed a proof of claim in the amount of $5,348,325.26, *see* Claim No. 2, and Minetta AW filed a proof of claim in the amount of $1,310,659.53, *see* Claim No. 3. Thus, the total debt that plaintiffs seek to except from discharge is $6,658,984.79.

and misleading personal financial statement and statement of net worth provided to plaintiffs by defendant, and (iii) an allegedly false and misleading loan application provided by Erin Wicomb ("Wicomb") and Joseph Ferrigno ("Ferrigno") to plaintiffs, all relating to a certain real estate investment made by plaintiffs.[3] Additionally, plaintiffs assert that the debts were fraudulently incurred while defendant was acting as fiduciary to plaintiff, thus excepting the debts from discharge under § 523(a)(4). According to plaintiffs, the alleged falsity relates to (i) the joint liability of defendant and his brother, Peter Kovacs ("Peter"), to a third party in the amount of $1,250,000 to which they were not made aware of, and had plaintiffs been made aware of this joint liability they would not have invested $5,000,000 in the real estate transaction, and (ii) the source of funds used by Wicomb and Ferrigno in connection with the real estate transaction. Plaintiffs contend that defendant's misrepresentation of his and Peter's true financial condition as well as the source of funds used by Wicomb and Ferrigno renders the debts owed them, which exceed $6,600,000, nondischargeable. Understandably, defendant disagrees.

The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York, dated August 28, 1986, as amended by Order dated December 5, 2012. A proceeding to determine the dischargeability of a debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I) that bankruptcy courts may hear and decide. 28 U.S.C. § 157(b)(1).

---

[3] Plaintiffs commenced an action against Peter Kovacs seeking to bar him from receiving a discharge of the very same debts. In that action, Peter Kovacs moved to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief, and pursuant to Federal Rule of Civil Procedure 9(b) for failure to state with particularity the circumstances alleged to constitute fraud. *See* Adv. Pro. 19-8029. That motion to dismiss is the subject of a separate decision of this Court.

Now before the Court is defendant's motion to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief and, pursuant to Federal Rule of Civil Procedure 9(b), for failure to state with particularity the circumstances alleged by plaintiffs to constitute fraud.[4] [dkt. no. 13.] Plaintiff opposed that motion [dkt. no. 17], and defendant replied. [dkt. no. 18.] The Court has carefully considered the arguments and submissions of the parties in connection with the motion to dismiss. For the following reasons, the Court grants defendant's motion and dismisses the amended complaint in its entirety.[5]

## BACKGROUND

A.  Facts[6]

Plaintiffs allege that in or about 2015, Adam Weis ("Weis"), plaintiffs' principal, was approached by defendant, Peter, Wicomb and Ferrigno about his making an investment in real property located at 30 Thompson Street, New York, and 9 Minetta Street, New York. Am. Compl. ¶ 18. To induce Weis to loan them funds to renovate the real property, defendant, Peter, Wicomb and Ferrigno provided Weis with financial information relating to the real property and Mavrix Equity Group ("Mavrix"). *Id.* ¶ 19.[7]

---

[4] Federal Rules of Civil Procedure 9(b) and 12(b)(6) are made applicable to this adversary proceeding by Bankruptcy Rules 7009 and 7012.

[5] This decision is consistent with and explains further the basis for the Court's oral ruling at a status conference held on March 31, 2021.

[6] The facts stated are taken from plaintiffs' Amended Complaint ("Am. Compl.") [dkt. no. 10], unless otherwise noted, and are accepted as true for purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F. 3d 141, 145 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). References to the allegations in the Amended Complaint should not be construed as a finding of fact by the Court, and the Court makes no such findings.

[7] This allegation does not state what, if anything, was specifically provided by defendant (or by any of the other named individuals) to plaintiffs to induce them to make the loan, nor does it identify Mavrix or its principals.

Plaintiffs allege that, on or about April 21, 2015, Zoltan provided "certain financial documents" to Weis, including a signed financial statement and a statement of net worth. *Id.* ¶ 20; Ex. A. The Amended Complain defines "certain financial documents" as the "Zoltan Financial Documents," but does not specify what these "certain financial documents" consist of, and only the financial statement and statement of net worth allegedly given by defendant to Weis are attached as an exhibit. *Id.* ¶ 20; Ex. A. The Amended Compliant does not specify whether defendant's financial statement and statement of net worth were given to Weis in his individual capacity or as a member of plaintiffs.

Plaintiffs further allege that, on or about April 22, 2015, to induce Weis to make the real estate investment, Wicomb and Ferrigno provided "additional documents" to Weis. *Id.* ¶21. These "additional documents" are defined as the "Mavrix Financial Documents" and are lumped together with the "Zoltan Financial Documents" under the defined term "Financial Documents." *Id.* ¶21. This allegation does not specify what documents were provided by Wicomb and Ferrigno other than a reference to a uniform residential loan application allegedly provided to plaintiffs by Mavrix and which is attached as Exhibit B. *Id.* ¶ 21. The uniform residential loan application, dated April 22, 2015, is signed by Wicomb and Ferrigno, as co-borrowers, and lists Mavrix as their employer and each of them as managing partner. *Id.* Ex. B. Mavrix is not listed as a borrower under the uniform residential loan application, nor did it sign the loan application. *Id.* Ex. B. As with the financial statements allegedly provided by defendant, the Amended Compliant does not specify whether the loan application was given to Weis in his individual capacity or as a member of plaintiffs.

Although the Amended Complaint does not say what, if anything, was requested by plaintiffs of defendant, plaintiffs assert that defendant, Peter, Wicomb and Ferrigno failed to provide true and correct copies of all documents establishing their combined financial

wherewithal. *Id.* ¶ 22. Without specifying what, if anything, was said by defendant, plaintiffs further assert that defendant, Peter, Wicomb and Ferrigno "indicated" that Wicomb and Ferrigno used personal funds to invest in the real property. *Id.* ¶¶ 23–24. And again, without specifying what, if anything, was said by defendant, plaintiffs allege that defendant and Peter "indicated" that neither of them had any personal liability related to Mavrix or the real property. *Id.* ¶ 25.

As for the debt owed by defendant to Thompson AW, plaintiffs claim that on or about May 20, 2015, 30 Thompson LLC, an entity owned by defendant and Peter, executed a secured promissory note in the original principal amount of $4,000,000 in favor of Thompson AW ("30 Thompson Note"). *Id.* ¶ 33. The 30 Thompson Note is not attached as an exhibit to the Amended Complaint. Defendant and Peter signed a personal guarantee ("Thompson AW Guarantee") of the 30 Thompson Note and a separate confession of judgment in the amount of $4,360,000 ("Thompson AW Confession of Judgment"). *Id.* ¶ 34. The Amended Complaint does not tell us when defendant and his brother signed the Thompson AW Guarantee and the Thompson AW Confession of Judgment, nor are these documents attached as exhibits to the Amended Complaint. Additionally, the Amended Complaint does not tell us anything about the make-up of 30 Thompson LLC, other than a general factual allegation that it is an entity owned by defendant and Peter.

As for the debt owed by defendant to Minetta AW, plaintiffs claim that on or about May 6, 2015, Minetta Off 6th LLC, an entity owned by defendant and Peter, executed a secured promissory note in the original principal amount of $1,000,000 in favor of Minetta AW ("Minetta Off 6th Note"). *Id.* ¶ 39. The Minetta Off 6th Note is not attached as an exhibit to the Amended Complaint. Defendant and Peter signed a personal guarantee ("Minetta AW Guarantee") of the Minetta Off 6th Note and a separate confession of judgment in the amount of $1,090.000 ("Minetta AW Confession of Judgment") *Id.* ¶ 40. The Amended Complaint does

not say when the Minetta AW Guarantee and the Minetta AW Confession of Judgment were signed by defendant and his brother, and they are not attached as exhibits to the Amended Complaint. Additionally, the Amended Complaint does not say anything about the make-up of Minetta Off 6th LLC, other than a general factual allegation that it is an entity owned by defendant and Peter.

The Amended Complaint states that the 30 Thompson Note matured on November 20, 2015, the Minetta Off 6th Note matured on November 6, 2015, and defendant did not perform under his guarantee of the respective notes. *Id.* ¶¶ 35–36; 41–42. Plaintiffs filed the Thompson AW Confession of Judgment and the Minetta AW Confession of Judgment with the Clerk of the Supreme Court of the State of New York, County of New York, and judgment was entered against defendant on February 23, 2016 in favor of Thompson AW in the amount of $4,360,275 ("Thompson AW Judgment") and on June 1, 2016 in favor of Minetta AW in the amount of $1,090,225 ("Minetta AW Judgment"). *Id.* ¶¶ 37, 43. Plaintiffs filed a transcript of the Thompson AW Judgment and the Minetta AW Judgment with the Clerk of the Supreme Court of the State of New York State, County of Suffolk. *Id.* ¶¶ 38, 44. The Thompson AW Judgment and the Minetta AW Judgment are not attached as exhibits to the Amended Complaint.

After defendant defaulted under his personal guarantee of the respective notes, Weis "discovered" that defendant, Peter, Wicomb, Ferrigno and Mavrix had signed a promissory note in the amount of $1,250,000 ("Mavrix Note") in favor of John Delillo ("Delillo"). *Id.* ¶ 26. Weis claims to have discovered the Mavrix Note from an action titled *Delillo v. Kovacs* et al. (Index Number 650265/2017), commenced by Delillo against defendant and Peter in the Supreme Court of the State of New York, County of New York. *Id.* ¶ 26.[8] The Amended

---

[8] The Amended Complaint does not tell us anything further about the pending state court action, but according to plaintiffs' opposition to the motion to dismiss ("Opposition") [dkt no. 16], this action was brought by Delillo

Complaint does not state when the Mavrix Note was signed by defendant or any of the other co-obligors. The Mavrix Note is not dated, and it matured by its terms on November 20, 2015. *Id*. Ex. C.

According to plaintiffs, the Mavrix Note is an additional liability of defendant, as well as that of Peter, Wicomb, Ferrigno and Mavrix, and that the Mavrix Note was not disclosed in defendant's personal financial statement or his statement of net worth,[9] nor was it disclosed in the loan application provided by Wicomb and Ferrigno to plaintiffs. *Id*. ¶¶ 27–28. Plaintiffs claim, upon information and belief,[10] and without further explication, that defendant, Peter, Wicomb and Ferrigno used monies loaned by plaintiffs to satisfy the Mavrix Note. *Id*. ¶ 29.

Plaintiffs allege that Weis relied on the personal financial statement and statement of net worth submitted by defendant, and the loan application provided by Wicomb and Ferrigno, in making the real estate investment. *Id*. ¶ 30. While absent from the Amended Complaint is any allegation concerning the value of the real property or any encumbrances

---

against defendant and Peter to enforce the terms of the Mavrix Note. *See* Opposition ¶ 102. In defendant's reply memorandum ("Reply") [dkt. no. 17], defendant references a separate state court action brought earlier by Delillo against Wicomb, Ferrigno and Mavrix to enforce the Mavrix Note where counsel for Delillo filed an affirmation in support of a motion for summary judgment stating that the Mavrix Note was signed by defendants Wicomb, Ferrigno and Mavrix on May 19, 2015, approximately one month after the date Zoltan provided plaintiffs with his personal financial statement and statement of net worth and approximately one month after the date Wicomb and Ferrigno submitted their loan application to plaintiffs. *See* Reply 5, Ex. 3. Defendant asks this Court to take judicial notice of the attorney affirmation to establish the date the Mavrix Note was signed. The Court declines to take judicial notice of the attorney affirmation to establish the truth of the facts asserted. *See Kramer v. Time Warner Inc.*, 937 F. 2d 767, 774 (2d Cir. 1991) (stating court may take judicial notice of documents filed in other courts "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."). The Court observes, however, that the maturity date of the Mavrix Note (November 20, 2015) is the same as the maturity date of the 30 Thompson Note, which had a 6-month term, and the Minetta Off 6th Note likewise reflects that it too had a 6-month term having been signed on May 6, 2015 with a maturity date of November 6, 2015 according to plaintiffs.

[9] Zoltan's personal financial statement and his statement of net worth show that as of April 21, 2015 his net worth aggregated $7,595,100. *See* Am. Compl. Ex. A.

[10] Pleading facts upon information and belief is permitted "where the facts are peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F. 3d 110, 120 (2d Cir. 2010). Plaintiffs do not claim that the facts plead upon information and belief are within defendant's exclusive possession and control.

on the real property, plaintiffs allege that the amount invested by Weis was tied to the equity in the real property. *Id.* ¶ 31. Plaintiffs assert that if Weis had been made aware of the Mavrix Note, "Weis would not have provided funding to [d]efendant, Peter, Wicomb or Ferrigno." *Id.* ¶ 32.[11] Absent from the Amended Complaint is any allegation that, in providing funding, plaintiffs relied on anything said by defendant. The lone allegation of reliance is set forth in paragraph 30 of the Amended Complaint where plaintiffs assert that Weis relied on "Financial Documents" received from defendant and from Wicomb and Ferrigno to provide the funding. The documents relied upon are not specified, other than the collective defined term "Financial Documents" in paragraph 21 which includes defendant's personal financial statement and statement of net worth and the uniform residential loan application provided by Wicomb and Ferrigno.[12] Only those documents are attached as exhibits to the Amend Complaint. *Id.* ¶¶ 21, 30; Ex. A, B.

The Amended Complaint also alleges that (i) defendant and Castle Hill Court LLC owned real property in Southampton, New York, (ii) in October 2011, defendant transferred ownership of this real property to himself, individually, and in October 2016 he transferred ownership to 87 Castle Hill Court LLC *Id.* ¶¶ 16–17, 49, (iii) an action was commenced by plaintiffs in the Supreme Court of the State of New York, County of Suffolk ("State Court"), seeking to avoid the October 2016 transfer and any further disposition of the Southampton

---

[11] This allegation, as well as a like allegation in paragraph 30, is inconsistent with allegations that the loan was made to two corporate entities, and not to defendant, Peter, Wicomb or Ferrigno, individually, *see* Am. Compl. ¶¶ 33, 39, and that the debts arise out of defendant's guarantee of the corporate indebtedness, *Id.* ¶¶ 34, 40.

[12] Paragraphs 30-32 allege that it was Weis and not plaintiffs that provided funding for the real estate transaction and that Weis, and not plaintiffs, relied on the written statements provided by defendant and separately by Wicomb and Ferrigno. Similarly, paragraph 20 alleges that defendant provided Weis and not plaintiffs with his personal financial statement and statement of net worth. The Court observes that in the adversary proceeding commenced by plaintiffs against Peter, where plaintiffs seek relief similar to that sought here against defendant, paragraphs 30-32 of the Amended Complaint filed in that action allege that plaintiffs provided the funding and relied on the written statements received from defendant and separately from Wicomb and Ferrigno.

property, (iv) in August 2016, defendant and Peter brought an action in the State Court seeking to set aside both the Thompson AW Guarantee and the Minetta AW Guarantee,[13] and (v) plaintiffs brought an action in State Court to compel the turnover of defendant's interest in 87 Castle Hill Court LLC. *Id.* ¶¶ 45–52. The Amended Complaint does not explain how the transfer of the Southampton property and the ensuing litigation are at all relevant to the claims asserted in the Amended Complaint which at its core seeks to determine the dischargeability of debts owed by defendant to plaintiffs. The Court will not speculate about how the transfer of the Southampton property and the ensuing litigation relate to the claims asserted by plaintiffs in this adversary proceeding.

### B.  Procedural History

Defendant filed a petition for relief under chapter 11 of the Bankruptcy Code on August 30, 2018. [Bankr. Dkt. No. 1].[14] The chapter 11 case was converted on motion of defendant to a case under chapter 7 of the Bankruptcy Code by order of this Court dated November 28, 2018. [Bankr. Dkt. No. 23].

 On February 28, 2019, plaintiffs filed their initial complaint seeking to deny defendant a discharge under § 727(a) or, in the alternative, to bar defendant from receiving a discharge of debts owed them by defendant under § 523(a)(2). [dkt. no. 1.] Defendant moved to dismiss the complaint. [dkt. no. 7.] Plaintiffs responded by filing the Amended Complaint

---

[13] Although plaintiffs do not connect this allegation to the issue of dischargeability of debt, the Court observes that attached as Exhibit D to the Amended Complaint is a copy of a Temporary Restraining Order entered in favor of defendant and Peter in the referenced state court action (Index. No. 654466/2016). Am. Compl. ¶¶ 47–48, Ex. D. In his motion to dismiss, defendant states that pleadings filed by Weis in that state court action identify plaintiff Thompson AW as one-third 1/3 owner of borrower 30 Thompson AW and Weis as manager of 30 Thompson AW. Additionally, defendant states that plaintiff Minetta AW is a one-third owner of borrower Minetta Off 6th LLC. *See* Mot. to Dismiss 3–4, Ex. 2. In their opposition brief, plaintiffs do not take issue with defendant's assertion regarding the ownership of the two corporate borrowers and Weis' role as manager of borrower 30 Thompson AW.

[14] Docket references to defendant's main bankruptcy case, Case No. 8-18-75875-las, are cited as "[Bankr. Dkt. No. __]".

[dkt. no. 10], which is now the operative complaint in this adversary proceeding. In their Amended Complaint, plaintiffs no longer seek to deny defendant a discharge under § 727(a). Rather, plaintiffs allege two separate claims under § 523(a), both grounded in falsity. First, plaintiffs allege that defendant is barred from receiving a discharge of the debts owed them pursuant to § 523(a)(2) on the basis that defendant (i) falsely represented that neither he nor Peter had personal liability relating to Mavrix or the real property, (ii) falsely represented what funds were allegedly used by Wicomb and Ferrigno in connection with the real property, (iii) provided a false and misleading written statement respecting his financial condition, and (iv) is accountable for the uniform residential loan application provided by Wicomb and Ferrigno to plaintiffs. Second, plaintiffs allege that the debts owed them are excepted from discharge under § 523(a)(4) because defendant committed fraud while acting as fiduciary to plaintiffs.

Defendant moved to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief and, pursuant to Federal Rule of Civil Procedure 9(b), for failure to state with particularity the circumstances alleged by plaintiffs to constitute fraud. [dkt. no. 13.] Plaintiffs filed opposition to that motion [dkt. no. 17], and defendant filed a reply. [dkt. no. 18.] In their opposition brief, plaintiffs allege additional facts not set forth in the Amended Complaint to assert that the debts at issue are nondischargeable under § 523(a)(2) and (a)(4). As discussed below, the Court will not consider new facts or theories raised for the first time in plaintiffs' opposition to the motion to dismiss as these claims are not properly before the Court.

STANDARD OF REVIEW

A.  Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim

is and the ground upon which it rests." Fed. R. Civ. P. 8(a)(2)[15]; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To meet this standard, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Although on a motion to dismiss the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *see Koch*, 699 F. 3d at 145, this principle is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint; not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (internal citation and quotation marks omitted).

In deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the

---

[15] Federal Rule of Civil Procedure 8 is made applicable to this adversary proceeding by Bankruptcy Rule 7008.

complaint." *DiFolco*, 622 F.3d at 111 (citations omitted); *see also* Fed. R. Civ. P 10(c)[16] ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). For a court to consider a document external to the complaint as "incorporated by reference," there must be a "clear, definite and substantial reference" to the document in the complaint. *Helprin v. Harcourt*, 277 F. Supp. 327, 330–31 (S.D.N.Y. 2003). "A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner, Inc.*, 440 F. App'x. 7, 9 (2d Cir. 2011). "Multiple references to, and lengthy quotations from, an outside document have been considered sufficiently substantial to incorporate the document into the complaint by reference." *Allen v. Chanel Inc.*, No. 12 CV 6758 (RPP), 2013 WL 2413068, at *5 (S.D.N.Y June 4, 2013). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v.* Am. *Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Tuf America, Inc. v. Diamond,* 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (quoting *Poindexter v. EMI Record Grp. Inc.,* No. 11 Civ. 559 (LTS), 2012 U.S. Dist. LEXIS 42174, at *6 (S.D.N.Y. Mar. 27, 2012) (internal quotation marks omitted)).

Finally, a court may take judicial notice of matters of public record, including documents filed in other court proceedings, when considering a motion to dismiss. *See Kramer,* 937 F. 2d at 773–74. However, courts may only take judicial notice of documents

---

[16] Federal Rule of Civil Procedure 10 is made applicable to this adversary proceeding by Bankruptcy Rule 7010.

from other court proceedings "to establish the fact of such litigation and related filings" and "not for the truth of the matters asserted in the other litigation." *Id.* at 774.

B.  Rule 9(b)

Plaintiffs' claims under § 523(a)(2) and (4) are grounded in fraud. As such, in addition to pleading facts sufficient to meet the requirements of Rule 12(b)(6), plaintiffs must meet the specificity requirement of Rule 9(b) by stating the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b) ("[i]n alleging fraud…, a party must state with particularity the circumstances constituting fraud"). Under this heightened pleading standard a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995) (quoting *Mills v. Polar Molecular Corp.*, 12 F. 3d 1170, 1175 (2d. Cir. 1993)). While the second part of Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must "plead the factual basis which gives rise to a strong inference of fraudulent intent." *O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir. 1991). A strong inference of fraudulent intent "may be shown either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F. 3d 1124, 1128 (2d Cir. 1994); *accord ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F. 3d 87, 99 (2d Cir. 2007).

DISCUSSION

Plaintiffs assert two separate claims in the Amended Complaint. The first claim arises under 523(a)(2). This section bars an individual debtor from receiving a discharge of

certain fraudulently incurred debts. 11 U.S.C. § 523(a)(2)(A)–(B).[17] Section 523(a)(2)(A) prohibits an individual debtor from receiving a discharge from any debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition.*" 11 U.S.C. § 523(a)(2)(A) (emphasis added). Section 523(a)(2)(B), on the other hand, prohibits an individual debtor from receiving a discharge of debts obtained by "a statement respecting the debtor's or an insider's financial condition" when the statement in question was "in writing," "materially false," "reasonably relied" upon by "the creditor to whom the debtor is liable," and "that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B)(i)–(iv). A debt obtained by a fraudulent statement "respecting the debtor's or an insider's financial condition" is therefore nondischargeable only if the statement is in writing and the other requirements of § 523(a)(2)(B) are satisfied. "If that statement is not in writing, then, the associated debt may be discharged, even if the statement was false." *Lamar, Archer & Cofrin, LLP v Appling*, 138 S. Ct. 1752, 1757 (2018). "[A] statement is 'respecting a debtor's financial condition' if it has a direct relation to or impact on the debtor's overall financial status." *Id.* at 1761.

In their first claim for relief, plaintiffs argue that defendant is barred from receiving a discharge of the debts at issue under § 523(a)(2) because defendant falsely represented his and Peter's financial condition. The gravamen of plaintiffs' argument is that defendant and his brother "indicated" that they did not have any personal liability related to Mavrix or the

---

[17] Plaintiffs did not separately plead a claim for relief under § 523(a)(2)(A) and one under § 523(a)(2)(B), nor does the Amended Complaint mention either subsection. Rather, in the first claim for relief, the Amended Complaint recites a portion of the statutory language from subsection (A), Am. Compl. ¶ 55, and a portion of the statutory language from subsection (B), *id.* ¶ 56. Because there is a distinction between subsection (A) and (B) as to whether a debt obtained through a statement respecting a debtor's or an insider's financial condition may be discharged, the Court will address them separately. As discussed below, a debt that arises from a fraudulent statement respecting a debtor's or an insider's financial condition is nondischargeable only if the statement is in writing and the additional requirements set forth in subsection (B) are met. 11 U.S.C. § 523(a)(2)(B).

real property. This representation, plaintiffs claim, is false and is belied by the brothers' joint liability under the Mavrix Note, i.e., the undated $1,250,000 promissory note executed in favor of Delillo.

Additionally, plaintiffs argue that the debts are nondischargeable under § 523(a)(2) because defendant falsely represented what funds Wicomb and Ferrigno purportedly used in connection with the real property transaction. This allegation does not specify what, if anything, defendant said. Rather it alleges that "[d]efendant, Peter, Wicomb and Ferrigno indicated that Wicomb and Ferrigno had used their personal money to make a down payment" on the real property. Am. Compl. ¶ 23. Finally, plaintiffs argue that the debts must be excepted from discharge under § 523(a)(2) because defendant (i) provided a false and misleading financial statement since it did not mention his liability on the Mavrix Note, and (ii) should be held accountable for the uniform residential loan application submitted by Wicomb and Ferrigno to plaintiffs which did not mention their liability on the Mavrix Note.

Hence, plaintiffs seemingly base their allegations of fraud and resultant nondischargeability under § 523(a)(2) on four separate statements, two oral and two written. In their opposition brief, where plaintiffs cite to § 523(a)(2)(A), plaintiffs confine their argument that the debts owed to them are nondischargeable under subsection (A) to the alleged false representation concerning the source of the funds used by Wicomb and Ferrigno which they claim, contrary to the allegations in the Amended Complaint, was uttered by defendant alone and relied upon by plaintiffs. Additionally, in their opposition brief, plaintiffs (i) cite to § 523(a)(2)(B) as the basis for asserting that the debts are nondischargeable by reason of the written financial statements provided by defendant and the loan application provided by Wicomb and Ferrigno, (ii) allege in conclusory fashion that Mavrix, Wicomb and Ferrigno are "insiders" of defendant under § 101(31), and (iii) allege in conclusory fashion that defendant "adopted" the loan application provided by Wicomb and Ferrigno.  Notably

absent from the Amended Complaint is any factual allegation that Mavrix, Wicomb and Ferrigno are insiders of defendant, or that defendant "adopted" the loan application provided by Wicomb and Ferrigno. Those allegations and new theories are raised for the first time in plaintiffs' opposition brief.

In their second claim for relief plaintiffs argue that defendant is prohibited from receiving a discharge of the debts at issue pursuant to § 523(a)(4). This section excepts from discharge debts arising from fraud or defalcation by a fiduciary, as well as debts arising from embezzlement or larceny. 11 U.S.C. § 523(a)(4). Plaintiffs have not sought a determination that the debts at issue are nondischargeable based on embezzlement or larceny, nor is there any allegation in the Amended Complaint to suggest that defendant committed a defalcation during the course of a fiduciary relationship with plaintiffs.[18] Rather, like plaintiffs' first claim for relief, this second claim for relief sounds in fraud, but requires plaintiffs to plausibly allege the existence of a fiduciary relationship.[19] The Amended Complaint is devoid of any allegation that defendant acted as a fiduciary to plaintiffs as is required to state a claim that a debt is nondischargeable by reason of a fraud or defalcation under § 523(a)(4). In short, nowhere in the body of the Amended Complaint is there a factual allegation to support plaintiffs' legal conclusion that defendant acted in a fiduciary capacity. That theory is raised for the first time in plaintiffs' opposition brief where plaintiffs rely on additional facts not

---

[18] The second claim for relief merely recites the language of § 523(a)(4), i.e., that an individual debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4); Am. Compl. ¶ 59. In their opposition brief, plaintiffs state that the action is not seeking to except the debts from discharge by reason of embezzlement or larceny. *See* Opposition ¶¶ 113–114. The Amended Complaint does not mention "defalcation" nor does it allege that defendant engaged in actionable conduct giving rise to a claim of defalcation by a fiduciary. *See Bullock v. BankChampaign, N.A.* 569 U.S. 267, 273 (2013). The second claim for relief is premised on the same purported falsehoods as is the first claim for relief. The Court, however, does not find that plaintiffs' failure to specifically mention the term "defalcation" to be fatal and has considered the sufficiency of the factual allegations themselves in ruling on the motion to dismiss.

[19] Even if plaintiffs had plausibly alleged facts to support a claim that defendant's conduct amounted to a defalcation, the claim still fails because, as discussed below, plaintiffs have not plausibly alleged that the debts were incurred while defendant acted as fiduciary to plaintiffs.

alleged in the Amended Complaint to assert that defendant committed fraud while acting as fiduciary to plaintiffs.

Thus, for each claim for relief, plaintiffs allege additional facts and theories in their opposition brief that were not set forth in the Amended Complaint. The Court will not consider new facts or theories raised for the first time in plaintiffs' opposition to defendant's motion to dismiss as these claims are not properly before the Court. Simply stated, a plaintiff may not amend its pleading through an opposition brief. "It is well-settled that a plaintiff 'cannot amend [its] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'" *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (quoting *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013))*; see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting argument raised for first time in opposition to a motion to dismiss the complaint); *Thomas v. City of New York*, No. 12-CV-5061, 2013 WL 3810217 at *3 (E.D.N.Y. July 23, 2013). The Court, therefore, limits its consideration to the facts alleged by plaintiffs in the Amended Complaint, exhibits attached to the Amended Complaint and documents external to the Amended Complaint that may properly be considered by the Court when ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6). *See DiFolco*, 622 F. 3d at 111; *Kramer*, 937 F. 2d at 774.

Within this legal framework, the Court now turns to an analysis of plaintiffs' claim under § 523(a)(2), followed by plaintiffs' claim under § 523(a)(4).

A.  11 U.S.C. § 523(a)(2)(A)

As noted above, § 523(a)(2)(A) sets forth three separate bases for denying a discharge of debts, namely, debts obtained by "false pretenses, a false representation, or actual fraud," except when such debts were obtained by "a statement respecting the debtor's or an insider's

financial condition." 11 U.S.C. § 523(a)(2)(A).[20] Although the terms "false pretenses," false representation," and "actual fraud" refer to different concepts, *see Sandack v. Dobrayal* (*In re Dobrayal*), 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2012), the United States Supreme Court "has historically construed the terms in § 523(a)(2)(A) to contain the 'elements that the common law has defined them to include.'" *Husky Int'l. Elecs., Inc. v, Ritz*, 136 S. Ct, 1581, 1586 (2016) (quoting *Field v. Mans*, 516 U.S. 59, 69 (1995)). Accordingly, to assert a claim that a debt is nondischargeable under § 523(a)(2)(A), a plaintiff must plead sufficient facts showing that "[1] the debtor made a false representation; [2] the debtor knew the representation was false at the time it was made; [3] the debtor made the false representation with the intent to deceive the creditor; [4] the creditor justifiably relied on the representation; and [5] the creditor sustained a loss that was proximately caused by the false representation." *In re Moses*, 547 B.R. 21, 35 (Bankr. E.D.N.Y. 2016) (citing *Fleet Credit Servs. L.P. v. Macias* (*In re Macias*), 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (citation omitted)); *see also Chase Bank, USA, v. Vanarthos* (*In re Vanarthos*), 445 B.R. 257, 262 (Bankr. S.D.N.Y. 2011).

While courts draw a distinction among the three grounds set forth in subsection (A) and analyze each ground individually, *see Argento v, Cahill* (*In re Cahill*), Adv. Pro. No. 15-08298, 2017 WL 713565, *5 (Bankr. E.D.N.Y. Feb. 22, 2017), it is not necessary for this Court to undertake such an analysis in view of the general factual allegations in the Amended Complaint. Whether plaintiffs' asserted claim of nondischargeability is analyzed under "false pretenses," false representation," or "actual fraud," the outcome is nonetheless the same. The conclusory language contained in the Amended Complaint is insufficient to support a nondischargeability claim under § 523(a)(2)(A). Here, plaintiffs' claim under § 523(a)(2)(A) is

---

[20] A debt obtained by "a statement respecting the debtor's or an insider's financial condition" is addressed in § 523(a)(2)(B) and is discussed below.

based on two allegations of falsity. First, that defendant and Peter falsely represented their true financial condition by "indicating" that neither had personal liability related to Mavrix or the real property investment.[21] According to plaintiffs, this representation is false because defendant and Peter are co-obligors on the Mavrix Note, i.e., the $1,250,000 promissory note they signed in favor of Delillo. Second, according to plaintiffs, defendant falsely represented what funds Wicomb and Ferrigno purportedly used in connection with the real property transaction.[22]

As to the first purported falsehood relating to defendant's and Peter's liability on the Mavrix Note, plaintiffs do not assert in their opposition brief that this statement constitutes grounds to except the debts from discharge. Rather, in their opposition brief, plaintiffs limit their argument under § 523(a)(2)(A) to the second purported falsehood asserting that the debts are nondischargeable based upon "various representations" made by defendant, Peter, Wicomb and Ferrigno that Wicomb and Ferrigno used their own funds in connection with the real estate venture. Opposition ¶ 66. Nevertheless, the Court will consider the first purported falsehood respecting the financial condition of defendant and Peter as it is quickly put aside. The Court concludes that this claim for relief must be dismissed for the following reasons.

First, the allegedly false representation uttered by defendant is not actionable under § 523(a)(2)(A) because it is a statement "respecting the debtor's or an insider's financial condition" which is expressly carved out of subsection (A) and expressly provided for in subsection (B). 11 U.S.C. § 523(a)(2)(A)–(B). On this issue, subsection (A) and (B) are mutually exclusive. The language of the statute could not be clearer. As noted above, a debt

---

[21] Am. Compl. ¶ 25. As noted earlier, this allegation does not specify what, if anything, was said by defendant as it lumps defendant and Peter together as making the overt statement respecting their financial condition.

[22] Am. Compl. ¶ 23. As noted earlier, this allegation does not specify what, if anything, defendant said. Rather it lumps together the four individuals and alleges, that "[d]efendant, Peter, Wicomb and Ferrigno indicated that Wicomb and Ferrigno had used their personal money to make a down payment" on the real property.

obtained by a fraudulent statement "respecting the debtor's or an insider's financial condition" is nondischargeable only if the statement is in writing and each of the other requirements of § 523(a)(2)(B) are satisfied. "If that statement is not in writing, then, the associated debt may be discharged, even if the statement was false." *Lamar*, 138 S. Ct. at 1757. Here, the allegedly false and misleading statement is not in writing and affects the financial condition of defendant and his brother, i.e., their joint liability on the $1,250,000 note executed in favor of Delillo. "[A] statement is 'respecting a debtor's financial condition' if it has a direct relation to or impact on the debtor's overall financial status." *Id.* at 1761.[23] That the allegedly false and misleading statement has a "direct relation to or impact" on both defendant's and Peter's true financial condition cannot be disputed by plaintiffs as it is at the heart of what plaintiffs assert and is central to their claim of nondischargeability under § 523(a)(2)(A).

Second, even if the allegedly false representation is not characterized as a "statement respecting the debtor's or an insider's financial condition," it still must be dismissed because plaintiffs have not adequately pled that they relied on the statement in making any decision to invest funds in the real estate transaction. Reliance is an essential element of a claim of nondischargeability under any of the three enumerated grounds set forth in § 523(a)(2)(A). According to the Amended Complaint, plaintiffs[24] relied on financial documents provided by defendant and by Wicomb and Ferrigno, and not on any oral statement made by defendant

---

[23] The question in *Lamar* was whether a debtor's oral statement concerning a single asset is a "statement respecting the debtor's . . . financial condition" within the meaning of section 523(a)(2). The Supreme Court answered in the affirmative. This Court sees no reason to draw a distinction between an oral statement respecting a single asset and an oral statement respecting a single liability as the latter can equally bear on a debtor's overall financial status.

[24] As noted above, paragraph 30 alleges that Weis and not plaintiffs "relied upon the Financial Documents" [defined in paragraph 21] to provide funding for the real estate venture. Even if properly alleged as plaintiffs' reliance, the outcome is the same. There is no allegation that plaintiffs relied on any oral statement uttered by defendant in making the decision to invest funds in the real estate transaction.

or Peter concerning the Mavrix Note or otherwise. Am. Compl. ¶ 30. Because plaintiffs admit in the Amended Complaint that they did not rely on any oral representations of defendant or Peter in advancing funds for the real estate venture, they have not adequately plead a claim under subsection (A). As such, the Court need not address the remaining four elements that a plaintiff must establish to state a claim under § 523(a)(2)(A). Nor is it necessary for the Court to reach the issue of whether plaintiffs have satisfied the heightened pleading standard under Rule 9(b) as the Amended Complaint does not satisfy the more lenient standard under Rule 8(a).

Turning to the second purported falsehood, i.e., the statement concerning the funds allegedly used by Wicomb and Ferrigno, this claim fares no better under § 523(a)(2)(A). It too must be dismissed. As with the first purported falsehood addressed above, plaintiffs admit that they did not rely on the allegedly false and misleading statement concerning what funds were used by Wicomb and Ferrigno when making their decision to advance funds for the real estate venture. Am. Compl. ¶ 30. Plaintiffs, therefore, have not plausibly alleged reliance, an essential element of a claim of nondischargeability under subsection (A). Again, as with the first purported falsehood, because plaintiffs admit in the Amended Complaint that they did not rely on any oral representation of defendant relating to the use of funds by Wicomb and Ferrigno, the Court need not address the remaining four elements that a plaintiff must establish to state a claim under § 523(a)(2)(A). Nor is it necessary for the Court to address whether plaintiffs have met the heightened pleading standard of Rule 9(b) with respect to this purported falsehood because the Amended Complaint does not satisfy the more lenient standard under Rule 8(a).

B.  11 U.S.C. § 523(a)(2)(B)

Having disposed of the claims asserted under § 523(a)(2)(A), the Court now turns to the adequacy of the claims asserted under § 523(a)(2)(B). As noted above, § 523(a)(2)(B) bars

an individual debtor from receiving a discharge of debts obtained by "a statement respecting the debtor's or an insider's financial condition" when the statement in question was "in writing," "materially false," "reasonably relied" upon by "the creditor to whom the debtor is liable," and "that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B)(i)–(iv). To prevail on a claim under subsection (B), a plaintiff must establish all enumerated elements. *See Bethpage Fed. Credit Union v. Furio* (*In re Furio*), 77 F. 3d 622, 624-25 (2d Cir. 1996). And in so doing, "[i]t is sufficient that [d]ebtors either wrote, signed, or adopted such statement to find that the documents were 'written' by them." *In re Cedillo*, 573 B.R. 405, 421 (Bankr. E.D.N.Y. 2017) (quoting *Hudson Valley Water Res., Inc., v. Boice* (*In re Boice*), 149 B.R. 40, 49 (Bankr. S.D.N.Y. 1992)).

The two purported falsehoods alleged by plaintiffs under § 523(a)(2)(B) concern the personal financial statement and statement of net worth submitted by defendant and the loan application separately submitted by Wicomb and Ferrigno. The Court will first address the adequacy of the allegations concerning the loan application. For the following reasons, this claim must be dismissed.

Plaintiffs assert in their opposition brief that defendant must be held accountable for the loan application given to them by Wicomb and Ferrigno because they are "insiders" of defendant and the loan application is false because it says nothing about Wicomb and Ferrigno's personal liability on the Mavrix Note. This, plaintiffs assert, renders the debts nondischargeable under § 523(a)(2)(B) because their claim is based on an allegedly false and misleading written financial statement that speaks to the financial condition of "insiders" Wicomb and Ferrigno. That Wicomb and Ferrigno are "insiders" is raised for the first time in plaintiffs' opposition brief. The Amended Complaint is silent as to any factual allegation that

Wicomb and Ferrigno are "insiders" of defendant.[25] Additionally, notably absent from the Amended Complaint is any allegation that defendant had anything whatsoever to do with the loan application given by Wicomb and Ferrigno to plaintiffs. That allegation likewise is raised for the first time in plaintiffs' opposition brief.

As a threshold matter, the Court turns to the requirement that the allegedly false and misleading written statement must be one "respecting the debtor or an insider's financial condition." 11 U.S.C. § 523(a)(2)(B)(ii). If it is not, then plaintiffs have not satisfied a key element of subsection (B). Thus, central to plaintiffs' claim relating to the falsity of the loan application provided them by Wicomb and Ferrigno is showing that Wicomb and Ferrigno are insiders of defendant. The Amended Complaint does not contain any factual allegation from which the Court can plausibly infer that Wicomb and Ferrigno are insiders of defendant. That theory, as noted earlier, is raised for the first time in plaintiffs' opposition brief. As such, that new theory, as well as the additional factual allegations contained in the opposition brief, are not properly before the Court and may not be considered in ruling on this motion to dismiss. *See, e.g.*, *Wright*, 152 F. 3d at 178 ("[A] party is not entitled to amend it complaint through statements made in motion papers."). Because the Amended Complaint is devoid of any allegations that Wicomb and Ferrigno are insiders, plaintiffs have not plausibly alleged a claim for relief under subsection (B) with respect to the loan application submitted by Wicomb and Ferrigno. Having so concluded, it is unnecessary for the Court to address the remaining enumerated elements that must be established for plaintiffs to state a claim for relief under § 523(a)(2)(B) with respect to the loan application given plaintiffs by Wicomb and

---

[25] The Amended Complaint does not mention the term "insider" nor cite to § 101(31) where the term "insider" is defined.

Ferrigno.[26] Nor is it necessary for the Court to address each of defendant's other arguments in favor of dismissal of this claim, including material falsity, scienter, and reliance.

Turning now to the alleged falsity of defendant's written financial statements, that claim fares no better and it too must be dismissed for the following reasons. An essential element of a claim under § 523(a)(2)(B) is that the creditor must have reasonably relied on the written statement. Here, the Amended Complaint does not allege that plaintiffs relied on defendant's personal financial statement and statement of net worth in deciding to advance funds for the real estate venture. Rather, in the lone paragraph that speaks to reliance, the Amended Complaint explicitly states that "Weis relied on the Financial Documents to provide funding to [defendant], Peter, Wicomb and Ferrigno." Am. Compl. ¶ 30. As noted above, the term "Financial Documents" includes not only defendant's personal financial statement and statement of net worth, but also (i) the loan application provided by Wicomb and Ferrigno, (ii) "certain financial documents" provided by defendant which are not identified and (iii) "additional documents" provided by Wicomb and Ferrigno which likewise are not identified. What then did plaintiffs reasonably rely on in making the investment decision? The Amended Complaint does not specifically tell us. In short, the Amended Complaint fails to adequately allege sufficient, particularized facts regarding reliance on any written financial statements. Reciting reliance on unspecified "[f]inancial [d]ocuments" in alleging material falsity or fraud falls short of the heightened pleading requirements of Rule 9(b). *Acito*, 47 F.3d at 51 (quoting *Mills*, 12 F. 3d at 1175). Without more detail, the Court has no way to evaluate whether and

---

[26] However, it merits noting again that the Amended Complaint is silent as to what, if anything, defendant had to do with the preparation and submission of the loan application by Wicomb and Ferrigno. Thus, even if plaintiffs had plausibly alleged in the Amended Complaint sufficient facts to support a claim that Wicomb and Ferrigno are "insiders" (which they clearly did not do), the claim under § 523(a)(2)(B) must still be dismissed as plaintiffs have failed to allege an essential element of an action to except a debt from discharge under this section. It must be the debtor's "written" statement and it is sufficient if the debtor "either wrote, signed, or adopted" the statement in question. *See Cedillo*, 573 B.R. at 421. Defendant did not sign the loan application, nor does the Amended Complaint allege that he wrote or adopted it.

to what extent plaintiffs reasonably relied on defendant's personal financial statement and statement of net worth in their decision-making process. For this reason alone, the claim must be dismissed. As such, the Court need not address the other elements that must be established to state a claim under § 523(a)(2)(B), namely, scienter and material falsity.

However, it bears noting that even if plaintiffs had plausibly alleged with specificity that they relied on defendant's personal financial statement and statement of net worth, the Amended Complaint does not allege facts supportive of how and why the written statements are false and misleading. Rule 9(b) requires no less. Here, plaintiffs do not point to any item in the financial statements provided by defendant on April 21, 2015 that is false or misleading in any way. Rather, the alleged falsity is premised on an undated note, i.e. the $1,250,000 Mavrix Note signed by defendant, Peter, Wicomb, Ferrigno and Mavrix in favor of Delillo. According to plaintiff this liability of defendant was not disclosed on his personal financial statement and statement of net worth which listed defendant's net worth as of April 21, 2015 at $7,595,100. Defendant asserts that plaintiffs have failed to adequately allege the falsity of the financial statements because the Mavrix Note was not signed at the time defendant submitted both his personal financial statement and statement of net worth to Weis. This, defendant says belies any claim of falsity. The Court agrees that plaintiffs have not plausibly alleged factual allegations relating to the execution and delivery of the note as the Amended Complaint contains no non-conclusory allegations suggesting that the note existed at the time defendant provided Weis with his written financial statements. Without more detail as to the circumstances surrounding the execution and delivery of the note, the Court has no way of knowing whether the note was an obligation of defendant at the time he submitted his written financial statements. In short, nowhere in the body of the Amended Complaint is there any allegation to plausibly support the inference that the Mavrix Note was signed prior to the submission by defendant of his personal financial statement and statement of net

worth to Weis. To the contrary, the allegations and the documents referenced in the Amended Complaint all point to a real estate investment based on a 6-month term. The 30 Thompson Note and the Minetta Off 6th Note, i.e. the promissory notes executed by 30 Thompson LLC and Minetta Off 6th LLC, respectively, which were each personally guaranteed by defendant, had a 6-month maturity. The 30 Thompson Note was signed on May 20, 2015 and matured on November 20, 2015. Am. Compl. ¶¶ 33, 35. The Minetta Off 6th Note was signed on May 6, 2015 and matured on November 6, 2015. *Id*. ¶¶ 39, 41. The Mavrix Note matured by its terms on November 20, 2015, the same date that the 30 Thompson Note matured. *Id*. Ex. C. Additionally, the loan application submitted by Wicomb and Ferrigno requested a $5,000,000 loan for a six-month term. *Id.* ¶ Ex. C.

Again, there is nothing in the Amended Complaint to suggest that the Mavrix Note was signed prior to May 20, 2015, a date six months prior to its stated maturity. If it too had a 6-month maturity consistent with the other documents referenced by plaintiffs, it would have been signed approximately one month after defendant submitted his written financial statements to Weis, thus contradicting the conclusory allegation that omission of the note renders defendant's written financial statements false and misleading. To survive a motion to dismiss, a complaint must provide sufficient non-conclusory allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Amended Complaint does not do so as it contains sparse and general allegations regarding the Mavrix Note.

Additionally, even if the allegations concerning the execution and delivery of the Mavrix Note were found to proffer sufficient non-conclusory facts to plausibly state a claim for relief, the Amended Complaint does not proffer sufficient non-conclusory facts suggesting that the written financial statements submitted by defendant were materially false or caused to be made or published with an intent to deceive as required under § 523(a)(2)(B). First, as to material falsity, "[a] statement is materially false under section 523(a)(2)(B)(i) if 'it paints

a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.'" *Bethpage Fed. Credit Union v. Furio* (*In re Furio*), 77 F3d 622, 625 (2d Cir. 1996) (quoting *Borg Warner Cent. Envtl. Sys., Inc. v. Nance* (*In re Nance*), 70 B.R. 318, 321 (Bankr. N.D. Tex. 1987)). Here, the Amended Complaint does not contain any factual allegation suggesting that if defendant's net worth was $6,345,100 (taking into account the $1,250,000 liability on the Mavrix Note) as opposed to $7,595,100 as reported on his April 21, 2015 financial statements, the loan would not have been made or that the difference in net worth would have affected the decision to invest funds in the real estate venture. On this element, the Amended Complaint falls short of the heightened pleading standard set forth in Rule 9(b), i.e., when alleging fraud "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Amended Complaint does not allege with any specificity that defendant's written financial statements were materially false regarding his financial condition.

As for scienter, it too is governed by the heightened pleading standard set forth in Rule 9(B). And again, the Amended Complaint falls short of satisfying this standard. The Amended Complaint does not "plead the factual basis which gives rise to a strong inference of fraudulent intent." *O'Brien,* 936 F.2d at 676. A strong inference of fraudulent intent "may be shown either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128; *accord ATSI Communications*, 493 F. 3d at 99. The allegations in the Amended Complaint do not plausibly support a strong inference of fraudulent intent. Nowhere in the body of the Amended Complaint is there an allegation respecting defendant's motive and opportunity to deceive plaintiffs in connection with the real estate transaction, or that defendant exhibited any conscious misbehavior or recklessness.

27

Thus, the allegations in the Amended Complaint do not plausibly support the inference that the personal financial statement and statement of net worth were materially false and presented by defendant with an intent to deceive. The Court now turns to the second claim for relief which suffers the same fate as the first claim for relief. It too must be dismissed.

C.  11 U.S.C. § 523(a)(4)

In their second claim for relief, plaintiffs allege that the debts are nondischargeable under § 523(a)(4). That section excepts from discharge a debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To state a claim for relief under § 523(a)(4), a plaintiff must plausibly allege three elements: "first, that the debt was incurred in connection with an express or technical trust, second, that the debtor acted in a fiduciary capacity with respect to the trust, and third, that the debtor engaged in fraud or defalcation within the meaning of bankruptcy law." *VW Credit, Inc. v. Salim* (*In re Salim*), No. 13-42974-ess, 2015 WL 1240000 at *14 (Bankr. E.D.N.Y. Mar. 16, 2015).

As noted earlier in this decision, plaintiffs do not seek a determination that the debts are excepted from discharge by reason of embezzlement or larceny, nor does the Amended Complaint allege that defendant's acts constitute defalcation. Rather, this claim for relief, as with the first claim for relief, sounds in fraud as it is premised on the same general factual allegations as plaintiffs' claim under § 523(a)(2). However, determining whether any of the allegations as to defendant's acts constitute fraud or defalcation is secondary as the threshold question is whether defendant was acting in a fiduciary capacity. In other words, in the first instance, plaintiffs must plausibly allege that defendant acted as a fiduciary. "To sustain a cause of action for fraud or defalcation under § 523(a)(4), the plaintiff must first establish that the debtor acted while in a fiduciary capacity." *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998). Here, the Amended Complaint is silent on this central element of an action

28

under § 523(a)(4) arising from fraud or defalcation. There are no allegations that even suggest that defendant was acting in a fiduciary capacity with respect to the purported conduct which plaintiffs assert gives rise to a finding of nondischargeability. This theory, that defendant acted as a fiduciary to plaintiffs, and the additional factual allegations of a fiduciary relationship including the existence of an express or technical trust, are raised for the first time in plaintiffs' opposition brief. As with the other theories of recovery that were not appropriately pled in the Amended Complaint, the Court will not consider plaintiffs new theory that defendant acted as fiduciary. These allegations are not properly before the Court on defendant's motion to dismiss. *See, e.g.*, *Wright*, 152 F.3d at 178. Because the Amended Complaint lacks any allegation that defendant acted in a fiduciary capacity, which is central to stating a claim for relief for fraud or defalcation under § 523(a)(4), plaintiffs' second claim for relief must be dismissed. As such the Court need not address defendant's other arguments in favor of dismissal of this claim.

CONCLUSION

For the reasons stated above, the Court grants defendant's motion to dismiss. The Amended Complaint is dismissed in its entirety.

SO ORDERED



**Dated: April 23, 2021**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**